IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| DENISE VUNCANNON,<br><br>                    Plaintiff,<br><br>        vs.<br><br>NORTHERN DIRECTORY PUBLISHING,<br>d/b/a NORTHWINDS PUBLISHING<br>AND PRINTING, a Montana<br>Corporation,<br><br>                    Defendant. | CV-04-83-GF-CSO<br><br><br>**ORDER** |

Before the Court are the following motions:

(1) Defendant Northern Directory Publishing, d/b/a NorthWinds Publishing and Printing's ("NorthWinds") Motion for Summary Judgment (*Court's Doc. No. 24*);

(2) Plaintiff Denise Vuncannon's ("Vuncannon") Motion in Limine (*Court's Doc. No. 20*); and

(3) NorthWinds' Motion in Limine (*Court's Doc. No. 22*).

Having carefully reviewed the parties' filings and considered the arguments advanced in their briefs, the Court is prepared to rule.

I.   **THE PARTIES' CLAIMS**

Vuncannon claims Northwinds, her former employer, violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Montana Wrongful Discharge from Employment Act

-1-

("WDEA"), Mont. Code Ann. § 39-2-901 *et seq.*  She alleges that NorthWinds violated the FMLA by: (1) failing to return her to her original full-time position as an accounting clerk, or return her to a similar position; (2) threatening to discharge her because she took FMLA leave; and (3) retaliating against her for reporting NorthWinds' conduct to the United States Department of Labor ("DOL") and harassing her after she returned to work. *Plf.'s Cmplt.* at 4, ¶ 12.  Vuncannon also alleges that NorthWinds violated the WDEA by: (1) constructively discharging her; and (2) "acting in a hostile manner because of [her] complaints" to the DOL.  Id. at ¶¶ 13-14.

NorthWinds denies these allegations and argues that Vuncannon's position was reduced from full-time to part-time as part of a legitimate non-discriminatory business reorganization and that Vuncannon was offered comparable employment.  *Def.'s Prelim. Pretrial State.* at 3; *Def.'s Ans.* at 4.

## II.   <u>FACTUAL BACKGROUND</u>[1]

Vuncannon began working for NorthWinds in 2000 as a computer data entry employee.  After a short time, she moved to the accounting department and was supervised by the company's controller.  Lee Gilliland ("Gilliand") became the controller in

---

[1] Many depositions and affidavits have been filed with the Court. This factual background is intended only to provide a framework to explain the Court's rulings.  Not all of the relevant fact contentions of the parties can be included here.

May 2003.

On September 7, 2003, she informed Gilliland that she was scheduled for colon cancer surgery the following week.  She began sick leave and had surgery on September 9, 2003.  NorthWinds allowed Vuncannon to use three weeks of accrued vacation and sick leave and then granted her FMLA leave.

Vuncannon returned to work on Monday, October 27, 2003.  The previous Friday, October 24, 2003, she had visited the office to give her supervisors a medical release to return to work.  At that time, according to Vuncannon, Mike Wier ("Wier"), NorthWinds General Manager, informed her that, while she was on leave, NorthWinds had moved some of her duties to other employees and that, as a consequence, her hours would be cut to part-time, and that part-time employees do not receive benefits.

Two days later, on October 29th, Vuncannon gave a letter to Wier and Gilliland stating that she needed a second surgery.  On October 31st, Wier and Gilliland gave Vuncannon three options due to the change in the accounting clerk position: (1) a full-time position as a sales agent at a lesser base pay but with health benefits; (2) a part-time accounting position with no health benefits; or (3) termination of employment with six weeks severance pay.  When Vuncannon refused to choose among these options, NorthWinds informed her that the "default option" was the part-time accounting position.  She was informed that the

-3-

accounting clerk position would become a part-time position on December 1, 2003, and that after she returned from the second surgery, she would no longer qualify for health benefits.

Vuncannon began her second leave on November 29, 2003. During this leave, she was treated as a full-time employee and retained full-time benefits. Upon her return from the second leave on January 20, 2004, however, Vuncannon was placed in a full-time receptionist position at the same rate of pay as the accounting clerk position, and with benefits. She contends that this assignment was a demotion, was demeaning and stressful, and that she was harassed by her supervisor and other employees. She resigned from NorthWinds on February 3, 2004.

Sometime during the prior November Vuncannon had contacted the DOL to complain about NorthWinds. She testified that she told Wier that she believed NorthWinds had violated the FMLA, but that she did not tell anyone at NorthWinds that she had made this DOL complaint. She also testified that she did not make the DOL complaint until after NorthWinds had informed her that her job was being reduced to part-time. Kirk Davey ("Davey"), a former NorthWinds employee, stated in an affidavit that prior to Thanksgiving, November 27, 2003, Weir stated that he was "going to make Vuncannon a receptionist whether she liked it or not" and that Wier "indicated that he knew or suspected [Vuncannon] was going to take legal action against the company." In his

affidavit, Wier avers that prior to receiving a letter from the DOL on June 14, 2004, NorthWinds had no notice that any complaint had been made regarding any FMLA issue.  He further avers that Vuncannon's DOL complaint played no part in any decisions NorthWinds made regarding Vuncannon's employment.

## III.  DISCUSSION

### A.   NORTHWINDS' MOTION FOR SUMMARY JUDGMENT

#### 1.    Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable trier of fact to return a verdict for the nonmoving party.  Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits, which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that

there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

The Court may not weigh the evidence or determine the truth of the matter, but only may determine whether there is a genuine issue for trial. Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 410 (9th Cir. 1996).  All reasonable and justifiable inferences must be drawn in favor of the nonmoving party, including questions of credibility. Mason v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991); United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)(en banc) (citing Liberty Lobby, 477 U.S. at 255).  It is the Court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987).

### 2. Parties' Arguments

NorthWinds presents four arguments it believes merit summary judgment. *Def.'s Brief in Support of Mot. S.J.* (hereafter "*Def.'s Brief*") at 2-3.  First, NorthWinds contends that judgment should be granted on Vuncannon's retaliation claims under both

the FMLA and the WDEA because Vuncannon has produced no evidence of retaliation.  <u>Id</u>. at 3-4.  Second, NorthWinds asserts that judgment should be granted on Vuncannon's claims for punitive damages and pain and suffering because these damages are not available under the FMLA or the WDEA.  <u>Id</u>. at 4-6.  Third, NorthWinds argues that judgment should be granted on Vuncannon's claim that NorthWinds violated the FMLA for failing to return her to her original position.  It contends that as a matter of law, Vuncannon is only entitled to the position she would have had if she had never taken leave, and NorthWinds argues that it provided that.  <u>Id</u>. at 6-7.  Finally, NorthWinds asserts that judgment should be granted on Vuncannon's constructive discharge claim because she cannot prove that NorthWinds' decisions to make her position part-time or put Vuncannon in the receptionist position were pretextual.  <u>Id</u>. at 7-11.

Vuncannon responds[2] by arguing that summary judgment is not appropriate because genuine issues of material fact exist.

---

[2] Vuncannon filed her Brief in Opposition to Defendant's Motion for Summary Judgment (*Court's Doc. No. 30*) on October 6, 2005.  On October 7, 2005, Vuncannon filed an amended brief (*Court's Doc. No. 32*).  Vuncannon failed to seek leave of the Court to file this amended document.  <u>See</u> L.R. 7.1(g).  Filing an amended brief without a motion explaining the changes and the reasons therefor is confusing and time-consuming to the Court and opposing parties.  It also raises questions as to when a reply brief is due.  <u>See</u> L.R. 7.1(f).  The better practice, and the one contemplated by the local rules, is to file a motion seeking leave to file an amended brief.

NorthWinds did not object to the filing of this amended document.  After review, it appears that the amended brief only corrects typographical errors and does not add substantive arguments.  Accordingly, the Court will refer to the amended brief.

*Plf.'s Amend. Brief in Opposition to Def.'s Mot. S.J.* (hereafter "*Plf.'s Amend. Brief*") at 1-2.  Vuncannon asserts that a violation of the FMLA has occurred, and that there is evidence to support her attempted interference and retaliation claims.  Id. at 2.  Vuncannon contends that because there is evidence of retaliation, she is entitled to punitive damages and liquidated damages.  Id. at 2.  Finally, Vuncannon argues that she was constructively discharged and that "it is the right of the finder of fact to look at the actions of [NorthWinds] and determine whether or not they violated the law[.]"  Id.

> **3.    FMLA Claims**

The FMLA provides that employers must allow employees up to twelve weeks of leave in a year if the leave is requested for an employee's serious health condition that makes the employee unable to perform the functions of the position of such employee. 29 U.S.C. § 2612(a)(1)(D).  There is no dispute here that Vuncannon was entitled to, and was given, FMLA leave.

The FMLA further provides that, at the end of the leave, the employee must be reinstated to her position or to a position equivalent in pay, benefits, and other terms and conditions of employment.  29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214(a).  The right to reinstatement is not absolute.  It does not entitle an employee to a right, benefit, or position to which the employee would not "have been entitled had the employee not taken the

-8-

leave." 29 U.S.C. § 2614(a)(3)(B). The employee is only guaranteed that the taking of FMLA leave "will not result in a loss of job security or in other adverse employment actions." Xin Liu v. Amway Corp., 347 F.3d 1125, 1132 (9th Cir. 2003)(holding that factual issues precluded summary judgment on FMLA claims and reversing the district court).

It is also unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided for under this subchapter," 29 U.S.C. § 2615(a)(1), and "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). See also 29 C.F.R. § 825.220(a). The regulations provide that "an employer is prohibited from discriminating against employees . . . who have used FMLA leave" and that employers may not "use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c). These regulations are entitled to deference under Chevron USA, Inc. V. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984); Xin Liu, 347 F.3d at 1133.

The Ninth Circuit has clearly established that "§ 2615(a)(2) applies only to employees who oppose employer practices made unlawful by FMLA, whereas, § 2615(a)(1) applies to employees who simply take FMLA leave and as a consequence are subjected to

unlawful actions by the employer." Xin Liu, 347 F.3d at 1133, n. 7 (citing Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1125 (9th Cir. 2001)). In Bachelder, the Ninth Circuit held that the statutory and regulatory language of FMLA makes clear that where an employee is subjected to "negative consequences ... simply because he has used FMLA leave," the employer has interfered with the employee's FMLA rights under 29 C.F.R. § 825.220(a)(1).

### i. Restoration to former position

NorthWinds argues that summary judgment is appropriate because "[t]here is no evidence here that NorthWinds denied [] Vuncannon her FMLA leave rights." *Def.'s Brief* at 6. It asserts that the FMLA restoration right is limited. Id. at 6-7. NorthWinds contends that Vuncannon's accounting position would have become part-time regardless of Vuncannon taking FMLA leave. Id. at 7. Accordingly, it argues that it "did not violate the FMLA when it restructured the accounting department and made the accounting clerk position half-time." Id.

Vuncannon alleges that NorthWinds used her FMLA leave as a factor in its decision to reduce her accounting position from full-time to part-time. If so, this would violate the standard set forth in 29 C.F.R. § 825.220(c). See Xin Liu, 347 F.3d at 1135. To prevail at trial, Vuncannon must establish "by a preponderance of the evidence that her taking FMLA leave

-10-

constituted a negative factor" in NorthWinds' decision to reduce her job from full-time to part-time.  Id. at 1136 (citing Bachelder, 259 F.3d at 1125).  Vuncannon can establish this by "using either direct or circumstantial evidence, or both."  Id. Further, it is NorthWinds' burden to demonstrate that its actions would have been taken regardless of the FMLA leave.  29 C.F.R. § 825.216(a).

NorthWinds has presented evidence that the decision to restructure Vuncannon's position occurred before Vuncannon took her first FMLA leave.  *Lee Gilliland June 21, 2005, Depo.* at 17:2-8.  Gilliland testified that before Vuncannon's first leave, NorthWinds had started moving some of Vuncannon's duties to other areas in the company.  Id. at 11:23-13:2.  Gilliland indicates that this occurred because NorthWinds was trying to improve profitability by, "cutting the expenses, [and] increas[ing] efficiency."  Id. at 48:24-49:3.  He contends that Vuncannon's old accounting position remains part-time.  Id. at 15:21-16:2; *Mike Wier June 21, 2005, Depo.* at 56:5-15; 57:7-8.

Vuncannon, however, stated in her affidavit that the only thing she was told prior to the return from her first FMLA leave was that inventory would be streamlined and that she would have additional duties.  She denies that she was informed that her full-time job would otherwise be changed.  She also disputes NorthWinds' contentions regarding the demands of her former

-11-

accounting position.  These, along with other contentions, raises genuine issues of material fact on Vuncannon's FMLA restoration claim.  As set forth above, the Court cannot make credibility findings on a motion for summary judgment.

### ii.  Retaliation

Title 29 U.S.C. § 2615(b) "prohibits discrimination against any individual for instituting or participating in FMLA proceedings or inquiries."  Bachelder, 259 F.3d at 1124. Specifically, 29 U.S.C. § 2615(b)(1) states that it is unlawful "to discharge or in any other manner discriminate against any individual because such individual [] has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter[.]"

NorthWinds asserts that because Vuncannon has provided no evidence of retaliation, its motion for summary judgment should be granted as to Vuncannon's claims that she was harassed and/or constructively discharged in retaliation for making a complaint to the DOL.  *Def.'s Brief* at 3.  It argues that Vuncannon stated in her deposition that there was no retaliation.  Further, NorthWinds contends that Vuncannon indicated that she had told no one at NorthWinds that she had complained to the DOL.  Id. at 3-4; *Def.'s Reply Brief* at 2.

NorthWinds asserts that there could be no retaliation because Vuncannon resigned on February 3, 2003, and NorthWinds

-12-

did not learn of the complaint to the DOL until June 14, 2004.
Id.  It also argues that there could be no retaliation because
the DOL did not inform NorthWinds about who made the complaint.
Id.  NorthWinds contends that "the record proves that there was
no connection between NorthWind's decision to restructure
[Vuncannon's] position and her DOL complaint."  *Def.'s Reply
Brief* at 2.

Vuncannon responds by arguing that there is evidence to
establish retaliation.  *Plf.'s Amend. Brief* at 4.  Vuncannon
testified at her deposition that two NorthWinds employees were
aware that Wier and Gilliland believed Vuncannon was going to sue
NorthWinds.  Id. at 4.  Vuncannon points to the affidavit of
Davey in which Davey states that Wier "knew or suspected
[Vuncannon] was going to take legal action against the company."
Id.; See also *Plf.'s State. Genuine Issues* at Ex. 5, pg. 2.
Vuncannon speculates that "the only way Wier would have had
information that [Vuncannon] was suing the company and talked
about it in a manager's meeting was via the agency investigating
the claim."  Id. at 4-5.

NorthWinds replies that Wier merely "suspected" Vuncannon
was contemplating legal action in November 2003, but that he did
not know of the complaint with the DOL.  *Def.'s Reply Brief* at 3.
NorthWinds further asserts that reliance on Davey's affidavit
"doesn't make sense when placed alongside the chronology of

events." Id. at 3-4.

Although Vuncannon's proffered evidence appears to be thin, the Court finds that there are genuine issues of material fact which preclude summary judgment on the issue of retaliation.  The Court may not weigh the evidence or determine the truth of the matter, Abdul-Jabbar, 85 F.3d at 410, nor may the Court make determinations on credibility.   Mason, 501 U.S. at 520.  The Court concludes that issues exist as to whether Wier had knowledge of Vuncannon's complaint to the DOL.  Fact issues also exist as to Davey's statements regarding the manager's meeting in November, 2003.

The Court further notes that, although some of Vuncannon's claims are less than clear, it appears that she is alleging retaliation not only for making a DOL complaint, but also that she suffered retaliation/harassment/interference because she exercised other FMLA rights.  These claims also present fact issues.  Accordingly, summary judgment on the FMLA liability issues will be denied.

### iii. **Punitive Damages and Damages for Emotional Distress**

NorthWinds argues that there is no authority for an award of punitive damages under the FMLA.  *Def.'s Brief* at 5.  Vuncannon does not present any FMLA authority permitting awards of punitive damages or emotional distress damages.

-14-

The Court thus finds that summary judgment is appropriate on Vuncannon's punitive damages claim.  Title 29 U.S.C. § 2617 provides that any employer who discharges an employee in violation of her FMLA protections is liable for: (1) compensatory damages; (2) liquidated damages; (3) prejudgment interest; (4) reasonable attorney fees; and (5) appropriate equitable relief.  Perez v. Hospitality Ventures-Denver LLC, 298 F. Supp. 2d 1110, 1111 (D. Colo. 2004) (citing 29 U.S.C. § 2617(a)(1)-(b)(3)).  Thus, "the FMLA only provides for compensatory and not punitive damages."  Xin Liu, 347 F.3d at 1133, n. 6; see also Reid v. SmithKline Beecham Corp., 366 F.Supp.2d 989, 1000 (S.D. Cal. 2005) (holding that punitive damages are not available for violations of FMLA); 176 A.L.R. Fed. 591, 622-23.

Nor does the FMLA allow recovery for emotional distress damages.  Washington v. Fort James Operating Co., 110 F.Supp.2d 1325, 1334 (D. Or. 2000); Cavin v. Honda of America Mfg., Inc., 138 F.Supp.2d 987, 992 (S.D. Ohio 2001); 176 A.L.R. Fed. 591, 623-27.  Accordingly, NorthWinds' motion for summary judgment as to emotional distress damages under the FMLA will be granted.

### 4.  WDEA Claims

To prevail on her claim under the WDEA, Vuncannon must establish that: (1) she was discharged and (2) the discharge was wrongful.  Kestell v. Heritage Health Care Corp., 259 Mont. 518, 523-24, 858 P.2d 3, 6 (1993).  Mont. Code Ann. § 39-2-903(2)

provides that "discharge" includes constructive discharge,
resignation, job elimination, layoff, failure to recall or
rehire, and cutback in the number of employees.  Vuncannon has
alleged that she was constructively discharged from her
employment with NorthWinds.  *Plf.'s Cmplt.* at 4, ¶ 13.
Constructive discharged is defined as:

> the voluntary termination of employment by an
> employee because of a situation created by an act
> or omission of the employer which an objective,
> reasonable person would find so intolerable that
> voluntary termination is the only reasonable
> alternative.  Constructive discharge does not mean
> voluntary termination because of an employer's
> refusal to promote the employee or improve wages,
> responsibilities, or other terms and conditions of
> employment.

Mont. Code Ann. § 39-2-903(1).

To prove constructive discharge, Vuncannon must establish
that NorthWinds "rendered working conditions so intolerable that
resignation is the only reasonable alternative."  Kestell, 259
Mont. at 524, 858 P.2d at 7.  A finding of constructive discharge
"depends on the totality of circumstances, and must be supported
by more than the employee's subjective judgment that working
conditions are intolerable."  Id.

Here, Vuncannon has testified that she was "singled out" by
the other employees and management personnel at NorthWinds.  She
claims that she was harassed and criticized by her supervisor,
Beth Peterson.  *Vuncannon June 20, 2005, Depo.* at 116:8; 116:14-
16; 124:17-25; 132:21.  Vuncannon testified that Weir and other

-16-

employees would pass her in the hall and not acknowledge her presence; she stated that no one would speak to her.  Id. at 132:12-19.  Vuncannon also provided an example of one specific instance of harassment, when a unknown person left a joke on her desk about "cannibals eating secretaries."  *Denise Vuncannon Oct. 5, 2005, Aff.* at 3, ¶ 9.  Further evidence indicates that notes were being placed in Vuncannon's personnel file without her knowledge.  *Vuncannon June 20, 2005, Depo.* at 226:3-227:8; *Depo. Exs.* 27 & 28.  Accordingly, the Court concludes that this evidence presents genuine issues about whether an "objective, reasonable person" would find these actions so intolerable that they would quit their job.  The Court, therefore, finds that there are genuine issues of fact which preclude summary judgment.

To prevail on her WDEA claim, Vuncannon must also establish that her discharge was wrongful.  Kestell, 259 Mont. at 523-24, 858 P.2d at 6.  A discharge is wrongful if "the discharge was not for good cause[.]"  Mont. Code Ann. § 39-2-904(2).  "Good cause" is defined as "reasonable job-related grounds for dismissal based on failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason."  Mont. Code Ann. § 39-2-903(5).  To defeat a motion for summary judgment on the issue of "good cause", Vuncannon must prove that the reason given by NorthWinds for the discharge "is a pretext and not the honest reason for the discharge."  Mysse v. Martens,

-17-

279 Mont. 253, 262, 926 P.2d 765, 771 (1996) (citations omitted).
"Mere denial or speculation" by Vuncannon is not sufficient, she
must establish that the facts are ample to raise genuine issues.
Id. (quoting Cecil v. Cardinal Drilling Co., 244 Mont. 405, 410,
797 P.2d 232, 235 (1990)).

NorthWinds asserts that summary judgment is appropriate
because the reduction of Vuncannon's job from full-time to part-
time and assignment to the receptionist position was done for a
legitimate business reason.  A "legitimate business reason" has
been defined as "a reason that is neither false, whimsical,
arbitrary or capricious, and it must have some logical
relationship to the needs of the business."  Kestell, 259 Mont.
at 525, 858 P.2d at 7 (quoting Buck v. Billings Montana
Chevrolet, Inc., 248 Mont. 276, 281-82, 811 P.2d 537, 540
(1991)).

The Court finds that there are genuine issues that preclude
granting NorthWinds' motion on this issue.  The affidavit of
Davey indicates that in November of 2003, while Vuncannon was out
on medical leave, Weir made the statement that Vuncannon would be
placed in the receptionist position "whether she liked it or
not."  *Davey Oct. 5, 2005, Aff.* at 2, ¶ 3.  Further, evidence has
been presented that other employees were working overtime to
complete the parts of Vuncannon's job that they had been given
(*Vuncannon June 20, 2005, Depo.* at 65:6-18), thus raising a

question as to NorthWinds' economic reason for changing
Vuncannon's position.  These facts, among others, raise questions
as to whether NorthWinds' actions were pretextual, and thus the
Court concludes that summary judgment is not appropriate.

NorthWinds contends that even if the WDEA claim survives a
summary judgment challenge, Vuncannon is not entitled to punitive
damages under the WDEA because it is "clear that [] Vuncannon's
discharge could not possibly have been in retaliation for her
reporting an FMLA violation to the federal government."  With
respect to punitive damages, the WDEA, Mont. Code Ann. § 39-2-
905, provides:

> (2) The employee may recover punitive damages . .
> . if it is established by clear and convincing
> evidence that the employer engaged in actual fraud
> or actual malice in the discharge of the employee
> in violation of 39-2-904(1)(a).
> (3) There is no right under any legal theory to
> damages for wrongful discharge under this part for
> pain and suffering, emotional distress,
> compensatory damages, punitive damages, or any
> other form of damages, except as provided for in
> subsections (1) and (2).

Section 39-2-904(1)(a) states that a discharge is wrongful if "it
was in retaliation for the employee's refusal to violate public
policy or for reporting a violation of public policy."

Because the Court previously found, *supra*, that there are
genuine issues of material fact that preclude summary judgment on
the issue of retaliation, the Court finds that there are also
issues of material fact which preclude summary judgment on

punitive damages under the WDEA.  Based on the evidence Vuncannon presents, however, the Court notes that it appears quite doubtful whether Vuncannon can muster the "clear and convincing" evidence of actual malice in connection with a violation of § 39-2-904(1)(a).  If she does not, judgment as a matter of law on this issue will be considered.  See Fed. R. Civ. P. 50(a)(1).

The Court finds that Vuncannon's claims for emotional distress and for pain and suffering claim under the WDEA must fail as a matter of law.  See Mont. Code Ann. § 39-2-905(3).

### B.   VUNCANNON'S MOTION IN LIMINE

Vuncannon moves the Court for an order in limine precluding NorthWinds from introducing the testimony of Lynda L. Brown "regarding the ultimate legal and factual issue for the jury, i.e., whether or not [NorthWinds] acted in a legitimate business manner in eliminating [Vuncannon] from her full time employment or her job position." *Plf.'s Mot. in Limine* at 1.  Vuncannon argues that Dr. Brown's testimony regarding NorthWinds' decision to cut Vuncannon's accounting position is inadmissible because it invades the province of the jury in making credibility determinations.  Vuncannon also argues that Dr. Brown's opinions are inadmissible legal conclusions and are based on unsupported speculation.  *Plf.'s Brief in Support of Mot. in Limine* (hereafter "*Plf.'s Brief*") at 2.

Relying on <u>Daubert v. Merrel Dow Pharmaceuticals, Inc.,</u> 509

U.S. 579 (1993), and <u>Kumho Tire Co. Ltd. v. Carmichael</u>, 526 U.S.
137 (1999), Vuncannon argues that Dr. Brown's opinion is
inadmissible because she fails "to have a sound basis for the
opinion offered." *Plf.'s Brief* at 2.  Vuncannon contends that
Dr. Brown does not rely on an "objective basis" for her opinion
regarding legitimate business reasons, but rather relies on "only
personal credibility determinations." <u>Id</u>. at 4.  She asserts
that Dr. Brown's opinions are inadmissible because they make a
decision as to the ultimate legal issue in this case.  <u>Id</u>. at 6.

NorthWinds responds by arguing that "[r]ather than offering
legal conclusions, Dr. Brown's testimony goes to ultimate factual
issues, which are admissible and an appropriate subject for
expert testimony." *Def.'s Brief in Response to Plf.'s Mot. in*
*Limine* (hereafter "*Def.'s Brief*") at 2.  It contends that Dr.
Brown "reasonably relied upon the statements given by Mike Weir
and Lee Gilliland." <u>Id</u>. at 3.  NorthWinds asserts that in her
report, Dr. Brown makes no comment regarding the credibility of
Weir and Gilliland.  <u>Id</u>. at 5.  Further, NorthWinds argues that
Dr. Brown "is not offering a legal opinion, but simply offers her
opinion on ultimate factual issues, which is proper under Rule
704." <u>Id</u>. at 6.

Fed. R. Evid. ("Rule") 704 provides that an expert's opinion
is not generally rendered inadmissible merely because it goes to
an ultimate issue to be decided by the trier of fact.

Accordingly, the motion cannot be granted on the basis that Dr. Brown's testimony may address an ultimate issue of fact.  Dr. Brown will not be permitted to offer legal opinions.

The remainder of this motion appears to be grounded on Vuncannon's contention that the reasons for Dr. Brown's opinions, that is, her interviews with Wier and Gilliland, are unsound.  In these circumstances, however, the Court concludes that these are matters for cross-examination and go to the weight, and not to the admissibility, of this expert's opinions.  Experts may, and frequently do, rely on the statements of others in forming their opinions.

**C.    NORTHWINDS' MOTION IN LIMINE**

NorthWinds moves the Court for an order in limine precluding Vuncannon from introducing evidence or presenting testimony regarding:

> (1) Any emotional distress, or physical pain allegedly suffered by [Vuncannon];
>
> (2) The details of [Vuncannon's] cancer and/or surgery during September, October, November and December of 2003 or January of 2004;
>
> (3) Any other reference to [] Vuncannon's alleged physical or mental suffering as a result of [NorthWinds'] alleged conduct, including testimony from and/or documents prepared by or for any physician or other health care professional, including but not limited to a prescription note from Ladonna Ladd dated 1/26/04 and a letter from James E. Mungas, M.D., dated January 29, 2004[;]
>
> (4) Any evidence or testimony regarding a complaint or complaints made by [] Vuncannon to

the United States Department of Labor regarding
alleged violations of the FMLA[; and]

(5) Testimony or evidence of grievances,
complaints, discipline, or discharge of any other
employee or former employee of NorthWinds.

*NorthWinds' Mot. in Limine* at 1-2.  The Court will address these issues in the order raised in NorthWinds' brief.

### 1.   Details of Vuncannon's surgery and treatment

NorthWinds seeks to exclude the details of Vuncannon's two surgeries for cancer, the fact that Vuncannon experienced complications, the details of her subsequent medical treatment, and evidence of discussions with her medical providers regarding her alleged emotional distress.  *Def.'s Brief in Support of Mot. in Limine* (hereafter "*Def.'s Brief*") at 5.  NorthWinds contends that the details of Vuncannon's surgeries and treatment have no connection to NorthWinds' employment decisions, and therefore are inadmissible under Rule 402.  NorthWinds asserts that these details are not relevant to determine NorthWinds' intent.  *Def.'s Reply Brief* at 3.

NorthWinds further argues that even if these details are relevant, they should be excluded as unfairly prejudicial under Rule 403.  Id.  It contends that these details have no probative value to Vuncannon's claims and that the admission of these details "could cause the jury to make a decision on an improper basis" which it argues would be unfairly prejudicial.  Id. at 3-

4.

Vuncannon responds by arguing that NorthWinds' motion should be denied because the information NorthWinds wishes to exclude is relevant and probative to demonstrate "the malicious nature of the actions of [NorthWinds] and goes to prove the claims made by her pursuant to Rule 402, Fed.R.Evid." *Plf.'s Brief in Opposition to Def.'s Mot. in Limine* (hereafter "*Plf.'s Brief*") at 4-5. Vuncannon contends that NorthWinds' motion seeks to remove the context in which it acted and would not allow for NorthWinds' actions to be placed in a framework. Id. at 4.

The Court agrees with NorthWinds that extensive testimony regarding the surgeries and subsequent medical treatment may not be probative regarding Vuncannon's claims and may be confusing and unduly prejudicial. The Court agrees with Vuncannon, however, that some testimony regarding her surgery and treatment must be presented so that the jury can understand the parties' claims and defenses. The motion will be denied at this time. Objections to this testimony may be presented at trial.

### 2. Evidence of emotional distress and pain and suffering

NorthWinds asserts that evidence of Vuncannon's emotional distress and pain and suffering are irrelevant to her claims and therefore evidence of such should be precluded. *Def.'s Brief* at 5. It argues that because damages for emotional distress and pain and suffering are precluded under the FMLA and WDEA, there

is no reason for the jury to hear evidence of emotional distress to determine what damages might be appropriate.  *Def.'s Brief* at 6.  NorthWinds contends that evidence regarding Vuncannon's physical or mental suffering is not relevant to her claim of constructive discharge.  Id.  It asserts that the jury should not focus on evidence of Vuncannon's emotional or physical suffering, but rather focus on the objective standard of the "reasonable person" standard required for constructive discharge.  Id. at 7.

Vuncannon responds that her physical and mental state is relevant to proving her constructive discharge claim, thus it should be allowed.  *Plf.'s Brief* at 5.  She asserts that NorthWinds' actions, in light of its alleged knowledge of her physical and emotional state, prove NorthWinds acted with malice, and that therefore information regarding her physical and mental state are relevant to her claims for punitive damages under the WDEA.

Because this evidence appears to be relevant to Vuncannon's WDEA claims, this motion will be denied.  Again, objections may be made to specific questions at the time of trial.

### 3.    Letters from Dr. Munger and PA Ladd

NorthWinds argues that letters from Vuncannon's physician, Dr. James Munger and a physicians' assistant, Ladonna Ladd, should be excluded as hearsay under Rule 802.  It asserts that because the letters "are not based upon any independent

investigation and merely recite facts provided by []
Vuncannon[.]" *Def.'s Brief* at 8.  NorthWinds contends that if
allowed, these letters would only appeal improperly to the
sympathy of the jury which is prohibited by Rule 403.  Id. at 8.

Vuncannon argues that the testimony of these health care
providers is relevant because it establishes "her need for care,
the effect of [NorthWinds'] actions toward her and the results to
her in terms of the impact on her health."  *Plf.'s Brief* at 6.
She asserts that this testimony is relevant and necessary to
prove that she was being treated intolerably.  Id.

NorthWinds responds by arguing that Vuncannon's medical
providers' testimony regarding her being treated in "a manner
which was 'intolerable'" is irrelevant."  *Def.'s Reply Brief* at
6.  Once again, NorthWinds asserts that her "particular
susceptibilities are irrelevant to prove constructive discharge"
because Vuncannon must establish that an objective, reasonable
person would have resigned under the same circumstances, not
herself.  Id. at 7.

NorthWinds' contentions that Vuncannon's statements to
medical providers are excluded by the hearsay rule are without
merit.  See Fed. R. Evid. 803(4).  The statements could be
relevant to the determination of whether punitive damages are
recoverable under the WDEA.  Accordingly, the motion will be
denied.

### 4.   Complaint to Department of Labor

NorthWinds contends that Vuncannon "may attempt to testify that she was told by the DOL investigator that NorthWinds had violated the FMLA."  It argues that the DOL investigator cannot be made to testify and that any testimony by Vuncannon regarding the DOL investigator should be precluded because it is inadmissible hearsay under Rule 802.  *Def.'s Brief* at 9.

Further, NorthWinds argues that the DOL investigation is irrelevant because it "did not even know about the complaint until long after [] Vuncannon had resigned."  Id.  It asserts that Vuncannon's complaint is not the reason why her job was made part-time, nor why she was "allegedly 'harassed'."  Accordingly, NorthWinds contends that the complaint and any documents generated from the complaint are irrelevant and should be excluded.  NorthWinds argues that if allowed, the documents would "add nothing but confusion to the issues before the jury", which Rule 403 is intended to prevent.   Id.

Vuncannon responds by stating that her complaint is "very relevant."  *Plf.'s Brief* at 6.  She argues that testimony regarding her own actions is not hearsay, and thus is admissible.  Vuncannon asserts that she should be allowed to present this evidence because it is important evidence for the jury.   Id.

Vuncannon will not be permitted to testify regarding any statements made to her by the DOL.  She may, however, testify

regarding her DOL complaints.  This motion will be denied.

### 5.   Testimony of other employees

NorthWinds argues that Vuncannon should be precluded from allowing past and other employees[3] of NorthWinds to testify.  It asserts that their testimony has nothing to do with the issues of this case, and, thus, would require the Court to conduct "mini-trials" within the present trial.  *Def.'s Brief* at 9-10.

Vuncannon responds by arguing that these employees will provide relevant information, especially testimony that is relevant to NorthWinds' defense.  *Plf.'s Brief* at 6.  She contends that the employees' testimony "is important as it puts into perspective the attitude of [NorthWinds'] managers toward [Vuncannon] and is relevant for the jury to determine if the FMLA violation was intentional and malicious."  Vuncannon also asserts that the employees' testimony shows habit of NorthWinds in its actions, and thus, is admissible pursuant to Rule 406.  <u>Id</u>. at 7.

This motion is overly broad and will be denied.  The Court cautions, however, that it does not intend to conduct "mini-trials" regarding other matters.  All witnesses will be limited to relevant testimony based upon personal knowledge that is directly relevant to Vuncannon's claims.

---

[3] NorthWinds does not list those employees it believes should be precluded from testifying.

-28-

IV.   **CONCLUSION**

Accordingly, based on the foregoing, IT IS HEREBY ORDERED:

(1) NorthWinds' Motion for Summary Judgment (*Court's Doc. No. 24*) is hereby **GRANTED** in part and **DENIED** in part. NorthWinds' motion is **granted** as to Vuncannon's FMLA claims for emotional distress and punitive damages and Vuncannon's WDEA claims for emotional distress and for pain and suffering. NorthWinds' motion based on other grounds is **denied.**

(2) Vuncannon's Motion in Limine (*Court's Doc. No. 20*) is **Denied.**

(3) NorthWinds' Motion in Limine (*Court's Doc. No. 22*) is **Denied.**

DONE and DATED this 16th day of December, 2005.

**/s/ Carolyn S. Ostby**
Carolyn S. Ostby
United States Magistrate Judge

-29-